The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Ladies and gentlemen, good morning. Welcome to the final day of argument in our September term. We welcome you to the Fourth Circuit. We'll hear first from counsel in United States v. Austin Webb, No. 12-4856. Ms. Lee, we'll be glad to hear from you whenever you're ready. May it please the Court, Austin Webb sold narcotics, was convicted, served a prison sentence, and was released on supervised release. While on supervised release, he was charged with a new offense of selling narcotics again, which he admitted to and pled guilty to. The district court, Judge Moon, conducted a combined sentencing hearing on the new offense and a revocation hearing on the supervised release, which was for the same kind of offense. He first imposed a sentence for the new offense of 80 months and then said, okay, we're done with that part of the proceeding. We're now going to do the supervised revocation proceeding and I'm going to give him, it was 32 months. All Judge Moon said at this time was he listed the factors that led him to the 32 months. He listed seven factors, which are very much similar to the factors he had just used to impose the sentence for the new substantive offense. The problem with listing these seven factors in the context of the revocation of supervised release is that fully three of them are impermissible under this court's precedent in Crudup. So fully three of the seven considerations that he listed are impermissible, not just under the court's previous case in Crudup, but also the statute itself, 3583. Is that language in Crudup dictum or not? Usually I'm the one saying something is dictum, but the court in Crudup was creating parameters under the new post-Booker regime for evaluating appellate claims of an improper sentence after revocation of supervised release. And it says so, it says we're here to establish a standard of review and we're here to say what courts should be, how courts should be conducting these hearings or how they should be in light of Booker. I guess it just struck me the other day reading over Crudup because the court just says, for instance, is mandated by, it almost seems to be an aside. It's actually, well it's literally reading from a statute. It is true that the appellant in Crudup did not claim that those factors were impermissibly considered, but to the extent that this court was giving guidance to district courts in applying 3582, 3583 in a post-Booker regime, it doesn't appear to be dicta. And I would submit that until the full court says that it did not mean to say that, this court, this panel is bound by what plainly appears in Crudup. And it's actually been quoted by a number of other courts throughout the nation. The Fourth Circuit's rule is X, and they quote that exact paragraph in Crudup. Let's assume that we were to find that the district court procedurally erred, we would apply a plain error analysis. Is that correct? Your Honor, I don't believe plain error is the correct, I'm sorry, because it was not objected to at sentencing. That's an interesting question. I would submit that the court should not try to apply, first of all, the standard already is plainly unreasonable. So I'm not sure how plainly unreasonable and plain error would interact. I do believe that courts generally don't require defendants after a sentence is imposed to go back and say, Your Honor, in the last few minutes while you were imposing sentence, can I just say that you've mentioned a few improper considerations and I want to lodge my objection. I've not seen the case requiring a defendant to do that. But interestingly, I represented Mr. Joyce, who appeared before this court in an appeal a year ago and is one of the cases that the government cites in its brief. Mr. Joyce had the identical issue to Mr. Webb, and in that case, and there were others too, but Joyce is the one that springs to mind, the government actually said to the district court, and it was again Judge Moon, all the cases I've personally handled with this issue have been Judge Moon cases, said to Judge Moon, Your Honor, my appellate division has requested that you not consider those three factors. And Judge Moon has said basically, as you can see in the transcript in the Joyce case, I don't know what you're talking about. I believe they're proper factors. Let me ask you about the conduct of the defendant, because that seems to be one of your main focuses of what the court did impermissibly, was to look at the conduct of the defendant, or is that correct? No, no. I say all three, but there's no clue from the transcript which consideration Judge Moon was giving more weight to. He lists the seven, but does not amplify any of them, does not go on to describe why one particular factor is relevant there. Right, but you don't have to. I mean, the court can certainly look at what the defendant did, the crime the defendant committed as part of its calculus, can't it? Yes, but he's not sentencing him for that. He had just sent him for that a few minutes before. But the statute 3583E talks about if the court is satisfied that such action is warranted by the conduct of the defendant in the interest of justice. What does that language mean? We're here in district court because of the conduct of the defendant. Clearly, the conduct of the defendant is not an irrelevant consideration. It's underlying all of the considerations. And what about that intertwining argument that other circuits have made? I mean, they're just so intertwined. If they're so intertwined, I would say if the court finds that they're so intertwined that they're all appropriate, I would say that the court is then substituting its judgment for the obvious statutory language. Congress has decided that only those five or six are relevant and the others are not relevant. Now, the court has said in previous unpublished cases here that there could be times that one of the impermissible considerations, promoting respect for the law, is so intertwined, the way that this guy committed this particular violation, that I can't fully exclude that consideration. But there's nothing in this record that could lead the court to say that Judge Moon deemed the impermissible considerations to be, he was only considering them to the extent they were relevant to permissible considerations. He literally appears from the record to be misreading the statute, to be having, to be inserting the extra considerations into 3583 that this court has said not only are not there, but are not there for a reason. Now, the way Crudup reads, and it's this circuit and it's sister circuits that have the same rule, which the rule being the considerations that are not circuits are the fifth and the ninth circuit are proceeding under the well-established statutory principle that Congress means what it says. It chooses its words carefully. It has a full staff to go over these things. Couldn't it be that Congress wanted to make sure that the court In other words, we're saying that these are the authorized factors. We said that in Crudup. Well, these reflect the congressional intent that they're the most important factors. Well, 3553 already says the court shall consider all of them, shall consider all of them. Right. And there's no exclusive language here saying that you can only consider these, right? The repetition of some of them should send a signal to this court to apply the rule of statutory construction. To read the word only in, isn't that what you're really asking? No, the rule I'm talking about is where Congress statute lists a number of factors, the ones that are not there. I think it's inclusio unis as exclusio alterius. We list them because we mean these and we intend to exclude the other ones. In 3583, the court could have said she'll follow all the same. And then we would, the judge in every case would still have to consider all of them. It left out this one and it left it out for a reason. And I would submit that reason is because the punitive part, supervised release is a system that came into play when parole was abolished. It's about easing the offender back into society. It's not about setting him up to commit a new crime and punishing him again. Failures on supervision are failures to reintegrate into society to the extent that, as with Mr. Webb, the conduct that constituted this failure to reintegrate creates a new offense that's separately prosecuted. And he's being punished. He's being punished by a number of years in federal prison for what he did on supervised release. Let me see how far your argument goes then. Are you saying then if Mr. Webb had committed a drunk driving offense that that would be of the same stature as first degree murder in terms of his revocation sentence? I don't know about the word stature because the... The same import, the same impact? No, because we have the guidelines that break down how much of your time you should get back based on the nature of the new violation. Okay, you're saying that's where it's calculated. I'm sorry? You're saying that's where it's reflected. Right, that's exactly how much new time you're exposed to getting. But if it is a new murder case, you're going to do the murder time in the murder case and it's not for the underlying sensibly less significant, although it's identical. Would you have an argument here if the judge had imposed the sentence of 30 months at the very bottom of the revocation guideline? If he had listed the same factors, I would. And what would that argument sound like? In other words, it's within the guidelines. It's the very bottom of the guidelines. Then this would say, this argument would say he needs to re-sentence him considering only proper considerations, whatever that yields. You can obviously go outside of guideline sentences and certainly on a revocation because actually the revocation guidelines were never guidelines at all. Does the rule of presumptive reasonableness for appellate review apply to a court? I don't think presumptive reasonableness can ever apply when a court is so expressly citing inappropriate considerations. Even in an initial sentencing, I would submit. If the court imposed a guideline sentence but said, I am giving you this sentence based on your race, that would require re-sentencing even though the sentence was within the guidelines. What if the court said nothing? The court said nothing. This court ordinarily and should send it back for the court to say something. The court knows it's making a record. In this case, it chose to make a record in no way amplifying any of these considerations but just listing them, apparently giving each one equal weight. So if we sent this back and Judge Moon said exactly the same thing except he left out the A3 factors, gave him 32 months, that would be the end of the case? I would submit that I would not have an appellate issue. I'm sure my client would still ask me to take an appeal. But yes, the claim would not have vitality. That's correct. Let's assume that it's plainly unreasonable as opposed to plain error analysis. Could we say in light of the circuit split and the fact that the Supreme Court has only eaten around the edges of this, they haven't explicitly said something, that it might be okay? You could say that if CRUDUP hadn't been written. But CRUDUP has to constrain this panel's options. If we were in the 2005 period of time and on this, you could say, well, you know, the issue's unclear. So even though we're now adopting a rule that you cannot consider impermissible factors, we find that it's not. I think the definition of plainly unreasonable is obviously unreasonable or clearly unreasonable, clear or obvious unreasonableness. Because it's not clear, we're going to find that he didn't act improperly. But CRUDUP is a published opinion that the district courts are charged with executing. And it chose, it chose in this case to go against its clear dictates. So the fact that there are other circuits that have not adopted the CRUDUP rule, and actually there appear to be fewer circuits with the other rule the government wishes for you to adopt than there are with this court's rule, is three to two from what I can gather. Thank you, Ms. Lee. You have some time for rebuttal. Thank you. Ms. Hudson, we'll be glad to hear from you. Good morning, Your Honor. It's the government's position in this case that the sentence imposed by Judge Moon for Mr. Webb's supervised release violation was neither procedurally nor substantively unreasonable, and that the sentence was not plainly unreasonable. And further, that if this court were to review this case under the plain error standard, that Mr. Webb cannot meet his burden under that standard. The sentence was procedurally reasonable because the court did consider the permitted 3553 factors and the Chapter 7 policy statements, and provided an adequate explanation of the sentence. And coupled with the broad discretion that this court has recognized... I'm sorry, did you say it's unreasonable or reasonable, procedural? Reasonable. You don't think there was error here? I think the court could certainly say that there was error, Your Honor, in that the factors... Wouldn't the court be right if it said that? Well, we're taking the position that it's not erroneous for the reasons that the other circuits have... But we apply fourth circuit law. I understand, and I don't think this court has held explicitly that the court is not permitted at all to consider the 3553A2A factors. And in fact, we would ask the court to hold consistent with those other circuits and consistently with the unpublished decisions in this court that it's not an absolute prohibition, even though Congress did not list the A2A factors in 3583. Well, I guess the cases you're referring to are those cases in which we've said, well, this factor is intertwined with conduct and so forth. But I don't think you're arguing that the law in this circuit is that there are factors that cannot be considered absent that intertwined kind of consideration. And Judge Moon didn't say that here. He didn't. And I think the law is to a degree unclear. I believe that the statement that is in Crudup that is the foundation for the defense argument in these cases that the court is not authorized to consider, I think is a correct statement, but I also think it is dictum. And I don't think that the court has explicitly held, though at least two circuits otherwise have characterized the Crudup holding, excuse me, the Crudup language as a holding. You didn't argue in your brief that it's dictum, did you? I don't believe we said that explicitly. No, Your Honor. The record in this case is regarding the arguments that were made before the district court, I think is worthy of some note in light of Judge Floyd's question as to whether plain error is the appropriate standard. Because the district court conducted a combined hearing, the arguments from both parties preceded the court's imposition on the sentence for the underlying felony offense. And the parties both argued their positions regarding the supervised release revocation before the court imposed sentence even on the felony offense. The district court sentencing, the judgments were separated. But in particular, when counsel for specifically was addressing the supervised release revocation and said that the range was 30 to 37 months and that he didn't see that the conduct was so egregious that Mr. Webb should have the high end of that range, suggesting that he was arguing without saying more for the low end of the guideline range. Except he also said that the combined sentence should be less than the bottom of the substantial assistance. Right. It's confusing. And my view of that is that when he said the two guidelines ranges taken together, setting aside that that's not how the sentence would be calculated. He then said, considering substantial assistance, which suggests that in that context, he was asking for a sentence regarding the felony offense. And it also makes sense that he would say when combining the ranges, the total was 81 to 108. I think he said in the defendant should get something less than that. Surely he wouldn't be asking just for something less than 81 months on the supervised release revocation, when in fact, as he recognized, the guideline range for the revocation was only 30 to 37. He was asking for it for both. That's how I read it. I think it certainly can be read that way. And that's how I think that's the only way it makes sense. But on the other hand, when you look at what he said earlier, I'm not sure that he wasn't separating the request for the supervised release revocation sentence in the first segment of his request and then turning later after having discussed the two issues, turning later to his request for the felony offense. So part of the problem, I suspect you'll agree, maybe you won't. Part of the problem is this artificiality around, okay, I'm going to sentence him for the felony and now I'm going to sentence him for the supervised release. I mean, I did it as a district judge, but that's really silly, isn't it? You have one human being in front of the judge about to be punished for his activity. And some might say it makes more sense for just the judge to say, who is this person? What has he done? What's his life been like? What's his record? How much time do I need to give him today going forward to achieve the purposes of sentencing? I just think that would make a lot more sense than, okay, his guidelines on the felony is this, and his guidelines on the supervised release is this, and it's an A violation versus a C violation. It's a mess. I understand. Clearly, Judge Boone thought this guy should get 120 months or thereabout. And certainly, these situations can get into hyper-technical situations, but I would point out that it's not always the case where a defendant is standing in front of the judge on a supervised release violation and has also been, in fact, prosecuted federally for the... Oh, it happens. It happens. It certainly does. It happens. And what's really interesting about this, more than what you just suggested, is that he's there on a substantial assistance motion, which really, if you step back from it... Wait a minute. So here's the government, on the one hand, advocating for this guy, saying, Judge, don't give him the 120 months mandatory minimum, because he gave us some information, although nobody's been arrested, apparently. And on the other hand, you have your colleague in the U.S. Attorney's Office saying, Judge, throw the book at him on the supervised release. Give him the whole 37 months. I mean, it's got to give a prosecutor a headache, if you ask me. It's so schizophrenic. Well, the questions that the court raises, I think, in looking at the practical difficulties with the situation presented in this case, are answered, really, by looking at the distinction that the commission made in requiring that the courts sentence the supervised release revocation by focusing on the breach of trust. And they really are two different things. And although it does lead to these practical difficulties, they are two different notions. And so the concern that the court, for a defendant who has not, in fact, been prosecuted yet for the perhaps too harshly by the district court, looking at that underlying conduct, as opposed to simply the fact that this supervised release term has already been imposed, and the defendant has done something to violate that court's breach of trust and focusing on that. So I think the commission in the Chapter 7 policy statements and the cases interpreting that have clearly made that distinction. And it is a meaningful distinction, and though it certainly leads to some practical difficulties, especially with a fact pattern like this one, they are two different things. You don't think it's a meaningful distinction to Mr. Webb, do you? If he's sitting at FCI somewhere, there's nothing going to happen at the end of the 80th month to Mr. Webb. He's not going to wake up the next day and say, oh, okay, now I'm serving my 32-month sentence for a breach of trust. He's in FCI somewhere being punished for breaking the law. That may be true. I guess I would say in a more hopeful voice that we would hope that the defendants might, in fact, recognize that on the one hand, they were being punished for their drug offense and the conduct that was out against the law under the federal code, and on the other hand, the court had permitted them to remain out under supervised release, and they had done something to violate that conduct. At any rate, under any theory, and particularly under plain error, even if this court were to find error and that it was plain, this particular sentence did not affect Mr. Webb's substantial rights, nor would it be a sentence that would affect the fairness and integrity of the judicial proceedings. So it would be the government's position that for all those reasons, the court should affirm Judge Moon's sentence of 32 months in this case. Unless there are any further questions? Thank you. Thank you very much, Ms. Hudson. You have some time remaining, Ms. Lee. Ms. Lee, before you get started, I looked in your brief, and in the last sentence, you cite the credible, and you say that the definition to be used for plain, quote, was the one used in the plain error analysis, which defines an error as plain if it's clear and obvious. So they're one and the same thing, aren't they? Thank you. I recognize the language that the court is quoting. I'm resisting endorsing Ms. Hudson's suggestion that it's incumbent upon me to establish a problem that calls into question the integrity of the proceedings and affects its substantial rights. So that's the part of the plain error analysis that I don't think applies. I was trying to articulate what plain meant, not whether the substantive standard was one and the same. My only other statement is that the government appears to agree, which actually surprised me a few minutes ago, that the language in Crudup that the district court is not authorized to consider such and such. The government said that's a correct statement, but is dicta, with Judge Keenan's invitation. If it's a correct statement, then let's follow it, even if it were dicta. And I would submit that it's not for this court to decide that it was dicta, this panel to decide that it was dicta, even if it were dicta, if it's actually correct. And this is a district judge who is just doing the opposite of what a statute and a case interpreting that statute command him to do. I would submit that's an appropriate case for reversal if the court has no additional questions. What was the government's recommendation on the substantial assistance? They wanted 96 months. Oh, on the substantive new felony? Yeah. 96 months. So Judge Moon went almost a year and a half below the government's recommendation. But well above the guidelines. Well, the guidelines, there was a mandatory minimum. Right. That's the guideline. The 5K removed the mandatory minimum. There's still a guideline sentence suggested in the sentencing guideline. I understand your argument, but the fact of the matter is the guideline sentence was 120 months. Yes. Judge Moon didn't have to grant the substantial assistance motion. That's true. Let alone reduce it 16 months below the government's recommendation. So my point is simply that with regard to plain error, which I think you essentially agree, you don't concede, but I think you understand that plain error is going to apply here. It just occurs to me that Judge Moon, like any reasonable judge, even though he recognized that he had two sentencing proceedings in effect, the felony and the supervised release, surely he didn't take the bench. And surely he didn't announce the sentence on the underlying felony without an idea, a pretty good idea, of what he was going to do on the supervised release. Right. And so how do you, if we disagree with you and we say you have to show us that there's some, you know, integrity of the court process or some prejudice to your client, how do you, can you just take a minute and tell us how he was prejudiced? If in fact, what I just sort of sketched out is the truth, which I think it is. Judge takes the bench. He knows he's got two sentences to impose. He knows there's a mandatory minimum of 120. Here's the government asked for 96 plus 37. If my math is right, it's like 130 some months and he ends up at 112 or something. I agree that the court came in to court that morning with a number in his head and he broke it down. But I submit that the way you break that down matters. Our procedures have to have guidelines. As my earlier example was, if the court says I'm giving you a guideline sentence, I'm giving to you based on your race, that's clearly impermissible. That lacks integrity. And it's so obviously lacks integrity that I would hope that this court would not say either that it was presumptively reasonable because it was within the guidelines or that it didn't really matter because the judge had a number in his head already. We have to see what the court put in the transcript as his reasons for imposing this. And he, this court, that court appears to be disregarding. I appreciate your metaphor, but the judge in your hypothetical probably should not be reversed but impeached. I'm using an extreme example, but it's the same quality. This is plain error. This is plain error. This is how's your client prejudice when the judge has come down by so much in the face of a government recommendation for so much more. Not that he's bound by the government recommendation. Clearly he's not. I don't know what the judge would have imposed if he truly understood that 3583 says you're not punishing him for the new offense. I don't know. We need to find out. You're pushing, you're trying to push us to a bright line rule. My question to you, is this the right case to draw a bright line in light of all the facts? Or would it be a clearer case where there weren't another sentencing at the same time? Is that, is that what the court is asking about? I'd have to think about that. The reason I do think this is appropriate case is because the record is so very sparse on how, I mean, he cites the factors, but he doesn't explain them. You know, the way this court often treats this issue on appeal in the unpublished opinion says, well, it could be relevant to these permissible factors. He just doesn't provide this court with any material to do that with. But it'd be a better case if it was just a straight up supervised release revocation, wouldn't it? See, I believe that Judge Davis's position is importing into appellate law district court experience, which isn't completely obvious from the record in this case. I believe this, I'm not even here on the new offense. I am not, I have not appealed the sentence. I don't have the judgment from the new offense in my record. I'm here just on the sentence he was given. And that's part of the problem. We really appreciate that. But the fact of the matter is you're here representing a person, your client, and your client was sentenced by this judge in one proceeding. And really, this is not a criticism. I totally understand you're here on the supervised release, but you understand we're looking at the case. We're not looking at the supervised release. We can't possibly assess. The district court was looking at the case. This court should look at the supervised release. This court can only look at the case that's before it. And that other criminal number is not before this. If you're asking us to leave out of our minds the fact that he was there on a 120-month mandatory minimum sentence for which you got us. Which is actually, that part is in the transcript. It permeates the record. We can't close our eyes to that. Right. Okay. I'm sorry, Judge Keenan. That was what I was about to say. Okay. Well, we appreciate very much your presentation, Ms. Lee. We will, as well as your own, Ms. Hudson. We'll come down and greet counsel and proceed to our second case.
judges: Andre M. Davis, Barbara Milano Keenan, Henry F. Floyd